**Sammie CLEMONS, Appellant,**

v.

**Bill ARMONTROUT, Appellee.**

**No. 89–3004EM.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1990.

Decided Dec. 19, 1990.

Robert E. Dolan, Jr., St. Louis, Mo., for appellant.

Stewart Freilich, Jefferson City, Mo., for appellee.

Before MAGILL and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

MAGILL, Circuit Judge.

Sammie Clemons appeals the district court's [1] denial of his writ of habeas corpus arguing that his conviction and sentence violated the double jeopardy clause of the Constitution; that the trial court failed to advise him of the maximum punishment for one of his charges; that his guilty plea was not knowingly and voluntarily made; and that he received ineffective assistance of counsel during the plea process. Because Clemons' claims are meritless, we affirm.

I.

On December 8, 1984, Sammie Clemons entered Voelker's Jewelry Store in Sikeston, Missouri. Mrs. Voelker was alarmed by Clemons' presence because she had observed him behaving suspiciously in their store on the previous evening. After he entered the store, Mrs. Voelker walked over to the phone to call the police. According to Mr. and Mrs. Voelker, Clemons then pulled out a gun, aimed it at Mrs. Voelker, and pulled the trigger. Clemons' gun did not fire and Mrs. Voelker was not injured. Mr. Voelker was also armed. After Clemons' failed attempt to shoot Mrs. Voelker, Mr. Voelker shot him in the hand and the leg. Clemons escaped, but the police later apprehended him at home where he confessed to the attempted robbery.

Clemons was charged with attempted first degree robbery, armed criminal action, and first degree assault. He pled guilty to the first two counts and entered an *Alford* [2] plea on the charge of first degree assault. After carefully explaining the consequences of his pleas, the trial court accepted the pleas and sentenced Clemons to fifteen years' imprisonment for attempted first degree robbery, life imprisonment for armed criminal action, and life imprisonment for first degree assault. Pursuant to the plea agreement, all three sentences were to run concurrently. Clemons sought postconviction relief which included a direct appeal to the Missouri Appellate Court. Clemons alleged that his conviction and sentence violated the double jeopardy clause of the Constitution and that he received ineffective assistance of counsel. The Missouri courts denied Clemons relief in each of his postconviction actions.

Clemons next filed a petition for habeas corpus in the United States District Court for the Eastern District of Missouri. In

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. In *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that an "individual accused of [a] crime may voluntarily, knowingly, and under-

standingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. at 167. In this case, even though Clemons denied attempting to shoot Mrs. Voelker, he felt that he would fare better before the judge than before a jury.

this petition, Clemons repeated his double jeopardy and ineffective assistance of counsel arguments. The district court denied Clemons' petition pursuant to the report and recommendation of the magistrate.[3] Clemons appeals the denial of his request for habeas relief.

## II.

Clemons raises four claims on appeal. First, he argues that his conviction and sentence violates the Constitution's double jeopardy clause because he received multiple punishments for the same offense. Second, Clemons argues that the trial court improperly accepted his guilty plea on the charge of armed criminal action. Clemons contends that the judge was required to inform him of the maximum punishment allowable for the charge before accepting his plea. Third, Clemons argues that none of his pleas were knowingly and voluntarily made. Fourth, Clemons maintains that he received ineffective assistance of counsel during the plea process because his attorney did not assure that he was fully aware of the consequences of his guilty pleas.

■ Clemons argues that the court's acceptance of his guilty pleas and the subsequent sentencing for first degree assault[4] and attempted robbery[5] violated the double jeopardy clause because the court used his attempt to shoot Mrs. Voelker to satisfy the "attempt to kill or to cause serious physical injury" element of first degree assault and to satisfy the "substantial step" element of attempted robbery. The Missouri Appellate Court, a United States magistrate, and a United States district court found this argument to be meritless. We agree. Clemons' pleas reveal that the government used different acts to fulfill the different elements of attempted robbery and first degree assault. By offering

a straight plea of guilty on the attempted robbery charge, Clemons admitted to all the elements of the charge. On the first degree assault charge, Clemons submitted an *Alford* plea, in which he specifically denied attempting to shoot Mrs. Voelker. Therefore, by admitting guilt on the attempted robbery charge and denying that he attempted to shoot Mrs. Voelker, Clemons implicitly acknowledged that different actions were used to satisfy the elements of the two charges.

Clemons argues that the Missouri Supreme Court's decisions in *State v. Neal*, 514 S.W.2d 544 (Mo.1974), and *State v. Richardson*, 460 S.W.2d 537 (Mo.1970), support his assertion that the trial court's actions violated the double jeopardy clause. We disagree. While both of these cases found a double jeopardy violation, the facts are distinguishable and the reasoning of both cases supports the conclusion that Clemons did not suffer a double jeopardy violation.

In *State v. Neal*, the defendant entered a hardware store, knocked the owner unconscious and shot the store manager. *Neal*, 514 S.W.2d at 547. The defendant then ordered the manager to open the cash register. *Id*. The defendant was convicted of two counts of assault and one count of robbery. *Id*. at 546. On appeal, he argued that his convictions violated the double jeopardy clause since the assault charges arose from the same actions as the robbery charge. *Id*. at 548. The Missouri Supreme Court held that the charge of assault against the store owner improperly overlapped with the charge of robbery, but that the charge of assault against the store manager was separate and caused no double jeopardy problem. *Id*. at 548–49. Clemons' assault on Mrs. Voelker, like the

---

3. The Honorable Carol E. Jackson, United States Magistrate for the Eastern District of Missouri.

4. In Missouri, a person commits first degree assault if he or she "attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Mo.Rev.Stat. § 565.050 (1986).

5. In Missouri, a person commits first degree robbery if he or she (1) forcibly steals property, and (2) in the course of the theft, he or another participant is armed with a deadly weapon. Mo.Rev.Stat. § 569.020 (1986). Attempted first degree robbery requires (1) the intent to commit first degree robbery, and (2) an act which is a substantial step toward the commission of first degree robbery. Mo.Rev.Stat. § 564.011 (1986).

assault of the store manager, was merely incidental to Clemons' attempted robbery. Therefore, Clemons' assault charge was separate from his attempted robbery charge and the court did not violate the double jeopardy clause by accepting his pleas and sentencing him for the two crimes.

In *State v. Richardson*, a defendant attempted to rob a liquor store by placing a butcher knife "right in [the] stomach" of the clerk on duty. *Richardson*, 460 S.W.2d at 537. The defendant was convicted of attempted robbery. *Id.* at 537–38. While the defendant was appealing his conviction, the government instituted new proceedings, charging him with assault of the store clerk. *Id.* at 538. The defendant was convicted of this crime as well. *Id.* The Missouri Supreme Court reversed the second conviction because the "necessary 'act toward the commission' of attempted robbery was the identical assault upon which the second charge was based." *Id.* at 540. Here, the government asserts that the Clemons' "necessary 'act toward the commission' of attempted robbery" was his entering the jewelry store with a concealed weapon. Since different actions were used to satisfy the distinct elements of the two charges, Clemons' sentences do not constitute repeated punishment for the same action.

■ Clemons also argues that his pleas were invalid because they were not knowingly and voluntarily given. He claims his guilty plea for the armed criminal action charge was improperly accepted because the trial court failed to advise him of the maximum punishment allowable for the charges. The transcript of the plea hearing, however, refutes this argument. At the beginning of the plea hearing, the trial court informed Clemons of the range of punishment for all three charges:

Q [Court]: The range of punishment on Count I [first degree assault] is the penitentiary not less than 10 years nor more than 30 years, or life. On Count II [armed criminal action] the range of punishment is the penitentiary not less than three years, [a]nd Count III [attempted robbery in the first degree], not less than five years in the penitentiary nor more than 15 years.
Do you understand the range of punishment?
A [Clemons]: Yes, sir.
Q [Court]: Do you have any questions that you would like to ask me? Would you like me to rearraign you and read these charges and ranges of punishment to you?
A [Clemons]: No, sir. I understand.
Q [Court]: You understand what you are charged with?
A [Clemons]: Yes, sir.
Q [Court]: You have no questions about it?
A [Clemons]: No, sir.

Plea Transcript at 3–4. While it is true that the trial court did not tell him the upper limit at that time, his counsel informed him in open court that the maximum sentence for the armed criminal action charge was life imprisonment.[6] The trial court did not misstate the law in its presentation of the punishment ranges for each of the charges; nor did any of the court's statements mislead Clemons. Given that any ambiguity was cleared up before the guilty plea was accepted, Clemons' second claim fails.

■ Clemons next argues that the trial court misled him by stating that he could receive up to 250 years' imprisonment if he chose to go to trial. If Clemons went to trial, the maximum sentence he could have received would have been two life sentences and a fifteen year sentence run consecutively. Even though the actual maxi-

6. Just before the court accepted Clemons' plea, the court asked him whether he had anything to say. Clemons' attorney then said:
MR. ROBBINS: Sammie, is there anything you can say that you think the judge may consider not giving you the maximum sentence? Now is the only time you may have. He may give you the life, life, 15 concurrent. If there is anything you think might cause him not to do that, say it now. This is the only chance you may ever have.
Plea Transcript at 21. Clemons replied, "I understand that."

mum sentence might be effectively equivalent to 250 years' imprisonment, the trial court's statement was incorrect. A trial court's misstatement in a plea hearing constitutes reversible error only when the misstatement plays a material factor in the defendant's decision to plead guilty. *Long v. United States*, 883 F.2d 966 (11th Cir. 1989). Clemons argues that the confusion instilled by the court's misstatement and the pressure he felt from the court prevented him from knowingly and voluntarily accepting the plea. Again, the plea hearing transcript refutes this claim. The court repeatedly offered Clemons the opportunity to ask questions and make comments. The court's misstatement did not affect Clemons' pleas. By the time the statement was made, the government and Clemons had already worked out a plea agreement. Furthermore, the statement was made after the court had explicitly told Clemons the punishment ranges for the charges filed against him. Since Clemons failed to show that the court's misstatement caused him any substantial prejudice, we reject his claim that his pleas were not made knowingly and voluntarily.

Clemons' final argument is that he received ineffective assistance of counsel because his attorney failed to inform him of the double jeopardy issue; did not correct the court's misstatement of the maximum number of years he could receive if he went to trial; and did not assure that Clemons knew the maximum penalties for each of the charges and the consequences of his guilty pleas. Claims of ineffective assistance of counsel during the plea bargaining process are reviewed under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The first part of this test requires attorneys to satisfy a threshold level of competence. The second part of the test requires the defendant to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370. Since the double jeopardy argument is mer-

itless, there can be no claim of ineffective assistance for counsel's failure to point it out. Clemons has not shown that there is a reasonable probability that but for his counsel's failure to correct the court's misstatement, he would not have pleaded guilty. Finally, the transcript of the plea hearing refutes Clemons' final basis for ineffective assistance of counsel. His lawyer told him in open court that, pursuant to the plea agreement, he was facing maximum penalties of "life, life, 15 concurrent." Since Clemons has failed to present any persuasive arguments or facts to support his ineffective assistance of counsel claim, we reject this claim as well.

### III.

For the foregoing reasons, we affirm the district court's denial of Clemons' petition for habeas corpus.